**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

|  |  |
|---|---|
| **UNITED STATES OF AMERICA,**<br>**Plaintiff,**<br><br>**v.**<br><br>**ANDREW MEYERS,**<br>**Defendant.** | **CASE NO.: 5:24-cr-00405**<br> **5:25-cr-00634**<br><br>**JUDGE CHRISTOPHER A. BOYKO**<br><br><u>**SENTENCING MEMORANDUM**</u> |

## I. INTRODUCTION

Defendant Andrew Meyers, through counsel, respectfully submits this memorandum to assist the Court in fashioning a sentence that is sufficient, but not greater than necessary, to comply with the purposes set forth in 18 U.S.C. § 3553(a). Mr. Meyers stands before the Court having accepted responsibility for his conduct and having entered guilty pleas to all counts charged in the Information and Indictment. He does not dispute the seriousness of his conduct, nor does he attempt to minimize the harm inherent in distributing controlled substances or possessing a firearm as a convicted felon.

The advisory guideline range in this matter is significant. Based upon a total offense level of 28 and a criminal history category of II, the advisory guideline imprisonment range is 87 to 108 months.

Mr. Meyers respectfully requests that this Court impose a sentence at the low end of the advisory guideline range, specifically 87 months, followed by a period of supervised release with substance abuse and mental health treatment. Such a sentence appropriately reflects the seriousness

of the offense while recognizing his acceptance of responsibility, personal history, addiction-driven conduct, and the mitigating context surrounding his drug use and beliefs.

## II. PROCEDURAL HISTORY

Mr. Meyers pled guilty to all counts charged in the five-count Information in Case No. 5:25CR00634 and to the single-count Indictment in Case No. 5:24CR00405 on January 22, 2026.

These offenses include possession with intent to distribute MDMA, ketamine, and marijuana; engaging in monetary transactions in property derived from unlawful activity; and possession of a firearm by a convicted felon. He has remained in federal custody since October 8, 2024.

## III. GUIDELINE CALCULATION

The Presentence Investigation Report determined that the total offense level is 30, after adjustments for firearm possession, maintaining a drug premises, and acceptance of responsibility.

With a criminal history category of II, the resulting advisory guideline range is 87 to 108 months imprisonment. Mr. Meyers does not dispute this calculation; however, believes the Court should not impose a 2 point enhancement for maintain a drug premise.

## IV. NATURE AND CIRCUMSTANCES OF THE OFFENSE

Mr. Meyers accepts responsibility for distributing controlled substances and acknowledges that his actions were illegal and dangerous. Law enforcement recovered MDMA, ketamine, marijuana, and other materials associated with distribution from his residence, along with a firearm located in his bedroom.

These are serious offenses, and Mr. Meyers understands that his conduct contributed to unlawful drug distribution and posed risks to the community. He also acknowledges that his possession of a firearm as a convicted felon reflects poor judgment and disregard for the law.

However, the nature of the substances involved and the motivations underlying his conduct provide important context. This case does not involve fentanyl trafficking, overdose deaths, or the distribution of highly lethal narcotics commonly associated with catastrophic community harm. Rather, the substances involved, MDMA and ketamine, are substances that, while illegal to distribute, have increasingly been the subject of legitimate medical research into therapeutic applications.

That context does not excuse Mr. Meyers' conduct. But it helps explain the misguided beliefs that contributed to his actions.

## V. HISTORY AND CHARACTERISTICS OF THE DEFENDANT

Mr. Meyers was raised in a working-class family and described a generally stable upbringing, maintaining strong relationships with his parents and siblings.

He graduated from high school and developed practical vocational skills in remodeling and construction.

Despite these strengths, Mr. Meyers developed a significant substance abuse problem beginning in early adulthood. He reported frequent ketamine use and daily marijuana use, acknowledging that ketamine became his drug of choice and that he was addicted to it.

His substance abuse was not occasional experimentation but developed into dependency that influenced his judgment and behavior. Rather than seeking proper treatment, he attempted to manage his emotional struggles through drug use. That decision ultimately led to the criminal conduct before this Court.

Since his arrest, Mr. Meyers has expressed genuine remorse and has acknowledged responsibility for his actions. He has stated clearly that he understands the seriousness of his conduct and wishes to address the underlying issues that contributed to it.

## VI. OBJECTION TO APPLICATION OF §2D1.1(b)(12): MAINTAINING A DRUG PREMISES

Mr. Meyers respectfully objects to the application of the two-level enhancement under U.S.S.G. §2D1.1(b)(12) for maintaining a premises for the purpose of manufacturing or distributing a controlled substance. The Presentence Investigation Report applies this enhancement based on the assertion that Mr. Meyers "manufactured THC products at his residence." However, the facts described in the offense conduct do not support the conclusion that the residence was maintained for the primary purpose of drug distribution or manufacturing as required under the guideline.

As set forth in Defendant's written objection to Paragraph 34 of the Presentence Investigation Report, the narrative of offense conduct contained in Paragraphs 10 through 25 does not establish that the residence at 756 Saxon Avenue functioned primarily as a drug premises. Rather, the report references communications, alleged meetings, and items recovered during the execution of a search warrant, but does not identify controlled purchases occurring at the residence, surveillance demonstrating repeated distribution activity from the residence, or investigative findings establishing that the residence itself was maintained principally as a drug distribution facility. The guideline requires more than incidental or occasional drug-related activity at a residence; it requires proof that the premises was maintained primarily for that unlawful purpose.

Additionally, the report itself confirms that Mr. Meyers did not live alone at the residence. Paragraph 21 indicates that when the search warrant was executed at 756 Saxon Avenue, Peter Gannon, Mr. Meyers' roommate, was present and occupied a separate bedroom. Numerous firearms recovered from the residence belonged to Mr. Gannon and were located in his bedroom. The presence of multiple occupants and the distribution of items throughout shared living areas

undermines the conclusion that Mr. Meyers personally maintained the residence for manufacturing or distribution purposes.

Furthermore, the report references the recovery of a device characterized as a pill press. In reality, the device was a product commonly known as a "Nug Smasher," which is used to extract liquid THC concentrate from marijuana flower. Upon information and belief, marijuana residue remained on the device at the time of the search. This device was not used to manufacture pills or tablets, and its characterization as a pill press materially overstates the nature of the equipment present in the residence.

The report also does not identify evidence establishing that the residence functioned primarily as a distribution hub, stash house, or manufacturing location. No controlled purchases were conducted at the residence, and no direct observations were made establishing that the premises was maintained primarily for drug trafficking purposes.

For these reasons, the two-level enhancement under §2D1.1(b)(12) is unsupported by the facts and should not be applied. If the Court sustains this objection, Mr. Meyers' total offense level should be reduced from 30 to 28.

## VII. CORRECTIONS AND CLARIFICATIONS TO PRESENTENCE REPORT FACTUAL ASSERTIONS

In addition to the objection to the maintaining-a-premises enhancement, several factual statements within the Presentence Investigation Report warrant clarification.

**Paragraph 9 — Detention Conduct**

Paragraph 9 references allegations suggesting threatening conduct while in custody. Mr. Meyers disputes the characterization that he made threatening statements toward staff. During the period referenced, Mr. Meyers experienced what can best be described as a mental breakdown

while detained. He denies making threats toward staff, and notably, no disciplinary report, formal write-up, or institutional disciplinary hearing was initiated as a result of the alleged conduct. The absence of institutional discipline supports the conclusion that the conduct did not rise to the level described in the report.

**Paragraph 11 — Reference to Unrelated Drug Investigation**

Paragraph 11 references an investigation involving methamphetamine, fentanyl, and cocaine. It is important to clarify that Mr. Meyers was not involved in the distribution of those substances. His conduct, as established in this case, involved ketamine, MDMA, and marijuana. None of the substances forming the basis of his conviction involved fentanyl, methamphetamine, or cocaine, nor were those drugs attributed to him in this matter. Additionally, those substances were associated with the original targets of the investigation conducted by federal authorities, not Mr. Meyers.

This distinction is significant, as the reference to fentanyl and methamphetamine carries a particularly severe connotation and risks overstating the nature of Mr. Meyers' conduct.

**Paragraph 21 — Characterization of Equipment**

Paragraph 21 indicates that a pill press was located in the basement of the residence. This description is inaccurate. The device referenced was a "Nug Smasher," which is used to extract THC concentrate from marijuana flower. It is not a pill press and is not used to manufacture tablets or pressed drugs. The device is commonly used to produce marijuana concentrates and is consistent with marijuana-related activity rather than synthetic drug manufacturing. Upon information and belief, the Government possesses photographs confirming the true nature of this device.

**Paragraph 22 — Alleged Post-Search Drug Activity**

Paragraph 22 suggests that Mr. Meyers continued drug trafficking activity after the search of his residence. Mr. Meyers disputes this assertion. After law enforcement executed the search warrant and removed all controlled substances from his residence, Mr. Meyers did not purchase additional controlled substances and was not actively engaged in drug distribution.

Instead, following the search, Mr. Meyers began working in the construction industry with his friend, Noah Sheehan. He participated in demolition work, including projects associated with facilities engaged in cancer research. Mr. Meyers was paid weekly by check through Mr. Sheehan's employer. This employment reflects an effort to transition toward lawful work following the execution of the search warrant.

## VIII. REVISED GUIDELINE POSITION

If the Court sustains the Defendant's objection to the application of U.S.S.G. §2D1.1(b)(12), the two-level enhancement should be removed. The resulting total offense level would be 28, rather than 30.

With a Criminal History Category of II, the revised advisory guideline range would be 87 to 108 months imprisonment. Under this corrected calculation, Mr. Meyers respectfully requests that the Court impose a sentence at the low end of the corrected guideline range, specifically 87 months imprisonment.

## IX. §3553(a) FACTORS SUPPORT A LOW-END SENTENCE AT OFFENSE LEVEL 28

The factors set forth in 18 U.S.C. §3553(a) strongly support a sentence at the low end of the corrected guideline range. The offenses in this case are serious and warrant meaningful punishment, and a custodial sentence within the advisory guideline range appropriately reflects the gravity of the conduct while promoting respect for the law. However, removal of the maintaining-

a-premises enhancement results in a guideline calculation that more accurately reflects Mr. Meyers' true conduct and level of culpability.

A low-end sentence remains sufficient to achieve the goals of deterrence and protection of the public, particularly when combined with structured supervision and substance abuse treatment. Mr. Meyers' history demonstrates that substance abuse played a central role in his criminal behavior, and treatment-focused rehabilitation remains critical to reducing the risk of recidivism. A sentence at the low end of the corrected guideline range therefore satisfies the statutory directive that the sentence imposed be sufficient, but not greater than necessary.

## X. SCIENTIFIC AND MEDICAL CONTEXT OF KETAMINE AND MDMA

While the distribution of MDMA and ketamine remains illegal under federal law, it is widely recognized that these substances have been the subject of increasing medical research regarding their therapeutic potential.

Ketamine, a Schedule III substance, has been used in controlled clinical settings for the treatment of severe depression and treatment-resistant mood disorders. In recent years, regulated medical providers have administered ketamine-assisted therapy under physician supervision for individuals suffering from major depressive disorder and other mental health conditions.

Similarly, MDMA has been studied extensively in controlled clinical environments for its potential use in treating post-traumatic stress disorder (PTSD), particularly among military veterans and individuals suffering from severe trauma. Clinical research institutions have conducted trials examining MDMA-assisted psychotherapy for individuals with chronic and treatment-resistant PTSD. These trials have drawn national attention due to reported improvements in patient outcomes under carefully supervised medical protocols.

It is important to emphasize that Mr. Meyers was not engaged in legitimate medical practice, nor was his conduct lawful or medically supervised. However, his own written statement reflects that he became aware of emerging medical research regarding the potential therapeutic use of substances such as MDMA and ketamine.

That awareness contributed to a misguided belief that these substances could be beneficial to others. While that belief was legally and morally flawed, it reflects a mindset different from that of individuals engaged purely in predatory or profit-driven drug trafficking.

This distinction does not excuse the conduct but provides meaningful context when evaluating his culpability and motivation.

## XI. ACCEPTANCE OF RESPONSIBILITY AND REMORSE

Mr. Meyers has accepted responsibility for his conduct from the outset of these proceedings. He pled guilty to all counts and provided a written statement acknowledging the seriousness of his actions and expressing remorse for the harm caused.

He acknowledged that distributing drugs and possessing a firearm as a felon were unlawful and dangerous decisions. He has also acknowledged that his addiction and poor judgment led him to make choices that harmed himself and others.

Acceptance of responsibility is not merely procedural in this case, it reflects genuine remorse and recognition of wrongdoing.

## XII. NEED FOR TREATMENT AND REHABILITATION

Mr. Meyers' conduct is inseparable from his substance abuse disorder. He admitted frequent ketamine use and acknowledged addiction to that substance. Addressing this addiction is critical to preventing recidivism and protecting the public. A structured period of incarceration followed by substance abuse and mental health treatment provides the most effective path toward

rehabilitation. A low-end guideline sentence provides sufficient punishment while preserving the opportunity for rehabilitation and reintegration into society.

## XIII. THE §3553(a) FACTORS SUPPORT A LOW-END SENTENCE

The factors set forth in 18 U.S.C. § 3553(a) support the imposition of a sentence at the low end of the advisory guideline range. The offenses in this case are undeniably serious and warrant meaningful punishment, and a sentence of 87 months appropriately reflects the gravity of the conduct while promoting respect for the law. At the same time, such a sentence is sufficient to achieve both specific and general deterrence, sending a clear message that unlawful distribution of controlled substances and firearm possession by a prohibited person will result in substantial consequences. A low-end guideline sentence also adequately protects the public by allowing for structured incarceration followed by supervised release and substance abuse treatment, which are critical to reducing the risk of future misconduct. Mr. Meyers' history demonstrates that substance abuse was a significant driving force behind his criminal behavior, and a sentence that incorporates treatment-focused rehabilitation provides the most effective path toward long-term public safety. For these reasons, a sentence at the low end of the advisory guideline range is sufficient, but not greater than necessary, to satisfy the statutory purposes of sentencing.

## XIV. REQUESTED SENTENCE

For the reasons set forth above, Mr. Meyers respectfully requests that this Court impose the following sentence; 87 months imprisonment (low end of the guideline range), a term of supervised release, mandatory substance abuse treatment, mental health counseling as directed by probation. Such a sentence is sufficient, but not greater than necessary, to achieve the purposes of sentencing.

## XV. CONCLUSION

Andrew Meyers stands before this Court having accepted responsibility for serious criminal conduct driven in large part by addiction, poor judgment, and misguided beliefs about substances he believed had therapeutic value. He does not ask the Court to excuse his conduct. Instead, he asks for the opportunity to be held accountable while still retaining the possibility of rehabilitation.

A sentence at the low end of the advisory guideline range appropriately balances punishment, deterrence, and rehabilitation while recognizing the unique mitigating circumstances present in this case.

Respectfully submitted,

DICAUDO, PITCHFORD & YODER, LLC

/s/ J. Reid Yoder
J. Reid Yoder (0076587)
209 S. Main Street, Third Floor
Akron, Ohio 44308
Telephone:330.762.7477
Facsimile:330.762.8059
Email: ryoder@dpylaw.com

**CERTIFICATE OF SERVICE**

The undersigned certifies that on April 27, 2026 a copy of the foregoing was served upon counsel for all parties.

/s/ J. Reid Yoder
J. Reid Yoder (0076587)